THE PEOPLE *a.* CARNLEY.

*Supreme Court, First District ; Special Term, September,* 1856

CRIMINAL CONTEMPT.—SHERIFF, WHEN LIABLE.

After an order made staying proceedings upon an execution in the hands of the sheriff, the plaintiff's attorney served upon the sheriff notices requiring him to return the execution in ten days, or show cause why an attachment should not issue against him for contempt.

*Held*, on subsequent application for an attachment, 1. That the stay of proceedings, if it continued in force up to the expiration of the ten days, exonerated the sheriff from the duty to return the execution.

2. That the plaintiff's attorney was bound, if the stay had been vacated, and he desired to bring the sheriff into contempt, to furnish him with proof that the stay was no longer in force.

Application for an attachment against Thomas Carnley, late sheriff of the city and county of New York.

On June 8, 1852, an execution was issued and delivered to the defendant, then sheriff of New York, in a suit wherein David S. Mills was plaintiff, and John Thursby defendant.

On that day the sheriff levied on the interest of Thursby in the co-partnership of John B. Thursby & Co.

Numerous motions were noticed for hearing by the defendant in the execution, and on the same day, June 8, an order was made by Judge Mitchell—on an affidavit made by defendant Thursby, setting forth that the execution was issued in violation of orders granted in the cause on February 14, 1852, on January 7, 1852, and on January 29, 1852, staying all proceedings in that cause, and that certain motions therein were still pending and undetermined—requiring the plaintiff to show cause why he should not be punished as for a contempt in issuing said execution, and it was further ordered that all further proceedings in such execution be stayed for twenty days, and until the further order of the court, and restraining the sheriff from selling in the meantime.

On June 26, 1852, an order was made in court at special term directing said motions to stand over to Saturday (then) next, and *continuing the order staying proceedings* until then.

And on the 30th of that month, a general order was entered at special term directing that all such motions should further stand over until July 10, 1852. On July 10, 1852, an order was made at special term, directing the motion further to stand over until July 17, and that in the meantime the stay of proceedings should continue.

On July 18, 1852, at special term, an order was made further adjourning said motions until Saturday, July 24, and further ordering that the stay of proceedings continue in force until that day.

On July 24, 1852, the motions came on to be heard, and no one appearing for plaintiff, an order was made declaring that the bond executed by defendant operated as a stay of proceedings, and further directing that all proceedings of the plaintiff upon said judgment and upon the executions be stayed until the final hearing at general term of said appeal.

On July 28, 1852, Judge Edwards made an order requiring the defendant to show cause on the 31st of that month why the order made on the 24th should not be vacated, and directing the sheriff to retain his levy.

On July 18, 1852, the plaintiff's attorney served upon the sheriff a notice requiring him to return the execution within ten days after such service, or show cause on July 30 why an attachment should not issue against him for a contempt.

On May 9, 1853, another notice was served on the sheriff, requiring him to obey the mandate of the writ, and as soon as such mandate was obeyed to return the execution.

For not complying with these notices, it was now sought to punish the late sheriff for a contempt.

It further appeared that plaintiff had obtained adequate security for his judgment, and that the court had by order of May 18, 1854, directed the levy made by the defendant in this proceeding by virtue of said execution to be abandoned, and that all proceedings under the same be stayed.

*A. Matthews,* for motion.

*Brown, Hall & Vanderpool,* for defendant.

DAVIES, J.—The first question presented is—Was the defend-

ant at liberty to, or could he at any time within ten days from July 18, 1852, comply with the notice served on him to return the execution?

On June 8, he had received the execution, and by the terms of it he had until the 7th of August to make the money called for by it.

He could not, therefore, be punished for a contempt for not returning it before the expiration of the sixty days.

The order of Judge Mitchell of June 8, 1852, contained a stay of proceedings on this judgment and execution, and this stay was regularly continued until July 24, when the order was made at special term directing a stay until the decision by the general term.

This order was clearly in full force until after the expiration of the ten days specified in the notice of July 18, within which the sheriff was to return the execution.

On May 9, 1853, another notice was served on the sheriff, requiring him to obey the mandate of the writ, and as soon as such mandate was obeyed to return the execution.

I do not understand this to be such a notice as is authorized by the rules of the court, and for disobedience to which the sheriff may be punished as for a contempt. To execute the mandate of the writ, I understand him to be restrained by the order of Judge Mitchell of June 8, 1852, restraining him from selling by virtue of the execution until the further order of the court. I do not find among the papers any order vacating this, and I must therefore assume it to be in force on May 9, 1853. It therefore follows that the sheriff could not on that day obey the mandate of the writ, and by the notice served he is not required to return the writ until such mandate is obeyed.

I am not able to see why he was not excused until he had some evidence that the order of June 8, 1852, had been vacated. He was not required to return the writ until the mandate of it was obeyed. This he could not do, and I do not think it would be just to punish him as being guilty of a contempt for not returning this execution pursuant to the requirement of this notice.

I feel less reluctance in arriving at this conclusion as I am

quite satisfied that the late sheriff was placed in a most difficult and embarrassing position, and has endeavored to do his duty. The facts disclosed show that if any leniency was to be expected it was from the side of the plaintiff, and that from the defendant, if he overstepped the strict line of his duty in the slightest degree, he would be held to the most rigid accountability.

The motion for an attachment is denied.

---

### EAGLE'S CASE.

*Surrogate's Court; New York County, September,* 1856.

ABSENT PERSONS.—TIME OF DEATH.—PRESUMPTION.

In the case of a person long absent and unheard from, it is competent for the court or jury to infer from circumstances, if any appear in proof, the probable time of his death.

If no sufficient facts are shown from which to draw a reasonable inference that death occurred within the lapse of seven years, the person will be accounted in all legal proceedings as having lived during that period ; and rights depending upon his life or death will be administered as if he had died on that day.

Of the power of executors to compound with testator's widow for her dower right.

A policy of insurance on buildings does not pass under a general devise of personal estate, but the representatives of deceased take such moneys as may be realized upon it in trust for the parties interested in the property insured.

Application by a legatee for a decree for the payment of a legacy by executors.

*Smith Barker,* for the legatee.

*A. L. Robertson,* for the executors.

BRADFORD, S.—The testator died on September 9, 1851. At the time of his decease, William Eagle, one of his sons and a legatee named in his will, had been absent between five and six years ; and the question is now presented whether he died before or after his father the testator.

It appears that William Eagle was born in 1822, and from the age of sixteen followed the sea as a mariner. He first made a whaling voyage to the Pacific, and, although absent